**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

HOLLY BLINKOFF,
     Plaintiff,

     v.

CITY OF TORRINGTON, et al.,
     Defendants.

No. 3:21-cv-1516 (SRU)

**<u>ORDER ON MOTIONS TO DISMISS, DOC. NO. 58; DOC. NO. 60; MOTION TO
STAY DISCOVERY, DOC. NO. 65; MOTION TO TAKE JUDICIAL NOTICE, DOC.
NO. 89; AND MOTION FOR SANCTIONS, DOC. NO. 87.</u>**

Plaintiff Holly Blinkoff ("Blinkoff") brings this independent action to reopen and

relitigate two previously adjudged cases, an action she filed in 1997, and a subsequent

independent action she brought in 2006 to set aside the judgment in the 1997 case. *See Blinkoff v.*

*Torrington Planning*, Dkt. No. 3-97-cv-1345 [hereinafter *1997 Case*]; *Blinkoff v. Dorman*, Dkt.

No. 3:06-cv-607 [hereinafter *2006 Case*]. On March 3, 2023, I held a hearing on the defendants'

motions to dismiss, doc. no. 58 and doc. no. 60, along with the defendants' motion to stay

discovery, doc. no. 65. *See* Doc. No. 91 (transcript). After the hearing, Blinkoff filed a motion to

take judicial notice, doc. no. 89, and a motion for sanctions, doc. no. 87. For the reasons

discussed below, I **grant** both motions to dismiss; I **deny as moot** the motion to stay discovery; I

**grant** the motion to take judicial notice; and I **deny** the motion for sanctions. Blinkoff's

amended complaint is **dismissed with prejudice**.

**I.     Background**

     A.   <u>The 1997 Case</u>

In 1997, Blinkoff, then represented by counsel, filed an action ("the 1997 Case") against

the City of Torrington Planning and Zoning Commission ("Planning & Zoning Commission")

and several of its members, including David Frascarelli, alleging, *inter alia*, discrimination and denial of equal protection. *See 1997 Case*, Doc. No. 44 at 1. In her complaint in the 1997 Case, Blinkoff alleged that in 1986, she inherited a parcel of land from her father's estate, which, in the years prior to her father's ownership, "had been operated as a gravel bank and excavated since the 1950s." *Id*. at ¶ 13. Blinkoff claimed that use of the land as a quarry had been exempt from the City of Torrington's zoning regulations. *Id*. at ¶ 14. In 1989, three years after Blinkoff began operating her business on the land, the newly appointed City Planner for the City of Torrington ordered Blinkoff to obtain a specific exemption permit to operate her business. *Id*. at ¶¶ 17-18. Blinkoff obtained the permit, but the operation of her quarry was subjected to restrictions.

At various points in time between 1989 and 1994, Blinkoff was limited to operating her quarry fewer than six hours per day, could only "operate for 30 days at a time," had to "shut down for six months," and could not operate on Good Friday. *Id*. at ¶¶ 20-24, 29; *see also* Doc. No. 53 at 1 n.1. She was also at one point required to move her excavation site as a condition for renewal of her permit. *1997 Case*, Doc. No. 44 at ¶ 29. Blinkoff alleged that the restrictions led to the dissolution of a business partnership she had made with a construction company, a consequence that she alleged caused her substantial financial loss. *Id*. at ¶¶ 28-32.

In 1997, Blinkoff filed a permit application to excavate an adjoining property. Blinkoff alleged she was deprived of due process in the adjudication of her permit application, and her application was ultimately denied. *Id*. at ¶¶ 44-48.

Blinkoff also alleged that she, a Jewish woman, was the only excavation business owner subjected to the restrictions and enforcement actions she faced, while the other "non-Jewish, male-owned" quarries were routinely exempted from those regulations and from that enforcement. *Id*. at ¶¶ 21, 26, 49. She further alleged that the City of Torrington had selectively

enforced zoning ordinances against her operation of a quarry based on her gender and religion. *Id.* at 18.

Blinkoff brought eight counts in the 1997 Case, including denial of equal protection based on her gender and/or religion, in violation of the Fourteenth Amendment, *id.* at 15, and denial of equal protection based on selective enforcement, in violation of the Fourteenth Amendment, *id.* at 18.

The 1997 Case went to trial in April 2002. Blinkoff had intended to call Raymond Carpentino ("Carpentino"), the former City Planner for the City of Torrington, as a witness to testify regarding whether zoning ordinances were selectively enforced. *See 2006 Case*, Doc. No. 3 at ¶ 51. Blinkoff alleges in her latest complaint that before Carpentino was scheduled to testify, the attorney for the City of Torrington, Nicole Dorman ("Dorman"), told Carpentino he would not be needed for the remainder of the trial. *See* Doc. No. 53 at ¶ 3. As a result, Carpentino did not appear for the trial; Blinkoff rested the case without Carpentino's testimony, which was material to her case; and ultimately, Blinkoff lost her case. *See id.* at ¶¶ 6-8; 11.

B.   The 2006 Case

In 2006, Holly Blinkoff filed a new complaint in federal court ("the 2006 Case") against, *inter alia*, the City of Torrington, David Frascarelli, and Nicole Dorman. *See 2006 Case*, Doc. No. 3 at 1. She brought two counts in her complaint: civil RICO under Section 1962(c), and fraud on the court seeking damages and relief from the judgment in the 1997 Case. *Id.* She alleged, *inter alia*, that the defendants had engaged in witness tampering, exhibit tampering, and mail fraud in connection with the 1997 Case. *See 2006 Case*, Doc. No. 3 at 1.

In an oral argument held in August 2007 on motions to dismiss the action, I dismissed Blinkoff's RICO claims but allowed her fraud on the court claim to proceed. *See Blinkoff v.*

3

*Dorman*, 2007 WL 4373130, at *1 (D. Conn. Dec. 12, 2007). In December 2007, I held a bench

trial on Blinkoff's fraud on the court claim and subsequently issued a decision denying her

requested relief. *Id*. After I entered judgment for the defendants, Blinkoff filed a motion for

reconsideration of the judgment. *See 2006 Case*, Doc. No. 234; Doc. No. 235; Doc. No. 239. I

denied her motion for reconsideration on January 9, 2008. *See 2006 Case*, Doc. No. 240; Doc.

No. 241. Blinkoff then filed an appeal of the judgment on January 9, 2008. *2006 Case*, Doc. No.

243. The Second Circuit denied her appeal on December 15, 2008. *2006 Case*, Doc. No. 310.[1]

### C.  The Plaintiff's Latest Action

In her latest action, Blinkoff seeks to bring two claims: fraud on the court pursuant to

Rule 60(d)(3) of Civil Procedure, and a Fourteenth Amendment equal protection claim under 42

U.S.C. § 1983. She brings the instant case against the City of Torrington, the Planning and

Zoning Commission for the City of Torrington, Greg Mele, Gregory Perosino, Nicole Dorman,

and Dave Frascarelli.

#### 1.  *Fraud on the Court Claim*

In the case at bar, Blinkoff brings another claim of fraud on the court pursuant to Rule

60(d)(3). Fed. R. Civ. P. 60(d)(3). In connection with her new claim, Blinkoff alleges the

following facts: During the trial of the 1997 Case, Blinkoff subpoenaed City of Torrington City

Planner Raymond Carpentino to testify as a material witness for the plaintiff. Doc. No. 53 at

¶ 24. In the 1997 Case, Nicole Dorman had served as counsel representing the City of Torrington

Planning & Zoning Commission and Dana McGuinness. *Id*. at ¶ 26. Because Carpentino was an

---

[1] The 1997 Case and the 2006 Case are not the only cases related to the case at bar. I also take judicial notice of
*CHRO v. City of Torrington*, 96 Conn. App. 313 (2006); *Blinkoff v. CHRO*, 129 Conn. App. 714 (2011); *Blinkoff v.
Dorman*, 180 Conn. App. 903 (2018); and *Blinkoff v. Dorman*, Dkt. No. HHD-CV-11-5035244-S ("the 2011
Connecticut Case").

employee of the City of Torrington, Dorman had the role of arranging for Carpentino to appear at the trial of the 1997 Case, and Blinkoff "had no access" to Carpentino. *Id.* at ¶¶ 28-29.

During the trial of the 1997 Case, Blinkoff and her counsel requested from Dorman that Carpentino appear on April 5, 8, 10, and 12, 2002, to testify in court. *Id.* at ¶ 30. Blinkoff alleges that on April 10, 2002, defendant counsel "lied and said Mr. Carpentino had to take his daughter to the doctor on April 12, 2002—the last day of trial." *Id.* at ¶ 34. Relying on the defense counsel's representations, the plaintiff rested and never called Carpentino to testify at the trial of the 1997 Case. *Id.* at ¶ 35.

Blinkoff now alleges that there are new facts proving her claim that Dorman lied to the court and to the plaintiff, and that Dorman had in fact told Carpentino he would not be needed at the trial in the 1997 Case. *Id.* at ¶ 3. Specifically, Blinkoff introduces testimony from Dorman at a deposition held in 2011 in connection with another case ("the 2011 Connecticut Case") that Blinkoff had brought in Connecticut state court against Dorman and the City of Torrington. *See Blinkoff v. Dorman*, Dkt. No. HHD-CV-11-5035244-S. Blinkoff argues that at the deposition, Dorman testified to calling Carpentino on April 8, 2002, and informing him "that he was not needed for the trial." *See* Doc. No. 53 at ¶ 4; *id.* at 29. In addition, Blinkoff introduces discovery documents from the 2011 Connecticut Case, in which Dorman had declined to admit or deny whether she had had phone conversations with Carpentino on April 5, 10, or 12, 2002. *See id.* at 40-41. Blinkoff argues Dorman's deposition testimony and responses to Blinkoff's requests to admit contradict Dorman's testimony at the bench trial held for the 2006 Case concerning fraud on the court. *See id.* at ¶ 44. Blinkoff therefore argues that Dorman committed fraud on the court and that Rule 60(d)(3) entitles Blinkoff to obtain relief from the judgment in the 1997 Case. *See id.* at ¶¶ 63-68.

5

2.   *Equal Protection Claim*

Blinkoff also brings another equal protection claim under Section 1983 against the City of Torrington, the Planning and Zoning Commission of the City of Torrington ("Planning & Zoning Commission"), Gregory Perosino, and Greg Mele. She again alleges she was "subjected to onerous conditions that her male [and non-Jewish] competitors were not subjected to." Doc. No. 53 at ¶ 2. Blinkoff alleges that when she owned and operated her quarry, she applied for an excavation permit on an adjacent parcel of land. *Id*. at ¶¶ 70-71. The City of Torrington denied her permit "based on the unacceptable intrusion into a residential zone" and because the permit would not be "in conformity with the city master plan." *Id*. at ¶ 72.

Approximately two decades later, on November 12, 2018,[2] Blinkoff visited the site of her former quarry and "discover[ed] her former competitor, O&G Industries, was operating it without a permit in their name." *Id*. at ¶ 75. The operation was "massive" and of a scale even larger than anything that Blinkoff had once proposed and been denied. *Id*. at ¶ 77. In March 2021, O&G Industries received a new permit through which it was able to merge additional parcels of land, including land that had once been Blinkoff's. *Id*. at ¶ 78. Blinkoff alleges that "[n]othing has changed" since she was denied a permit for her quarry—even the engineer behind the plan is the same engineer she used—except that O&G's quarry is larger and more intrusive to surrounding areas than her quarry would have been. *Id*. at ¶ 86.

---

[2] In her amended complaint, Blinkoff wrote that she discovered O&G's operation of the quarry on November 11, 2018. *See* Doc. No. 53 at ¶ 91. At the March 3, 2023 hearing, Blinkoff stated that she had made a typographical error in her complaint, and that she had included the correct date of November 12, 2018 in an exhibit attached to her amended complaint. Doc. No. 91 at 36; Doc. No. 53 at 114 (exhibit). Because she had attached the correct date in an exhibit, I will liberally construe Blinkoff's amended complaint and exhibits and assume that the discovery occurred on November 12, 2018. *See also* Doc. No. 88 at 3.

On the basis of those facts, Blinkoff claims that her Fourteenth Amendment right to equal protection has been violated. She appears to bring both a class-of-one claim and a selective enforcement claim.

## II.    Discussion

### A.    Plaintiff's Motion to Take Judicial Notice

After the hearing I held on March 3, 2023, Blinkoff filed a motion to take judicial notice. *See* Doc. No. 89. In Blinkoff's motion, she requests I take judicial notice of the transcript of the hearing I held on March 3, 2023; Dorman's appearance at her deposition for the 2011 Connecticut Case; Dorman's reply memorandum in support of a motion for protective order filed in connection with the 2011 Connecticut Case; an excerpt of Blinkoff's prior request to take Dorman's deposition in connection with the 2006 Case; an exhibit Blinkoff had filed with her amended complaint; an excerpt of a transcript from the 1997 Case for a hearing on a motion *in limine*; the docket sheet from the 1997 Case showing the denial of the motion *in limine*; and the first page of Blinkoff's amended complaint in the 1997 Case. *See generally* Doc. No. 89.

A court may take judicial notice of public records, including court filings and docket sheets. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Accordingly, Blinkoff's motion to take judicial notice is **granted**. *See* Doc. No. 89.

### B.    Defendants' Motions to Dismiss and Motion to Stay Discovery

The defendants have filed two motions to dismiss. Defendant Dorman has filed a motion to dismiss on the grounds that res judicata and collateral estoppel preclude Blinkoff's latest action, that Blinkoff's claim is barred by the doctrine of laches, and that Blinkoff's legal conclusions are unsupported by her factual allegations. *See* Doc. No. 60; *see also* Doc. No. 61.

Defendants the City of Torrington, the Planning & Zoning Commission, Greg Mele, Gregory

Perosino, Jim Bobinski, and Dave Frascarelli ("the City Defendants") move separately to dismiss

Blinkoff's claims. *See* Doc. No. 58. They argue Blinkoff's claims should be dismissed because

Blinkoff has failed to state a claim; her claims are moot; she lacks standing; the defendants lack

personal involvement in the alleged violations; the Planning & Zoning Commission is not an

entity that can be sued; Blinkoff has not set forth a plausible claim under *Monell v. Dept. of

Social Servs.*, 436 U.S. 658 (1978); her claims are barred by res judicata; and her equal

protection claim is insufficiently supported by her factual allegations. *See generally* Doc. No. 58-

1.

The City Defendants have also filed a motion to stay discovery pending the court's

adjudication of the City Defendants' motion to dismiss. *See* Doc. No. 65.

## 1. *Standard of Review*

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept the material facts

alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and

decide whether it is plausible that the plaintiff has a valid claim for relief. *See Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v.

Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). "Factual allegations" in a complaint "must be enough to

raise a right to relief above the speculative level" and assert a cause of action with enough heft to

show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 555, 570.

At the motion to dismiss stage, in addition to considering "the facts and allegations that

are contained in the complaint and in any documents that are either incorporated into the

complaint by reference or attached to the complaint as exhibits," a court may also take judicial

8

notice of "public records, including complaints filed in state court." *Blue Tree Hotels Inv.*, 369

F.3d at 217 (internal citations omitted); *see also Mangiafico*, 471 F.3d at 398 ("docket sheets are

public records of which a court could take judicial notice").

Res judicata is an affirmative defense. Fed. R. Civ. P. 8(c)(1). "A court may consider a

*res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to

the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate

for judicial notice." *TechnoMarine SA v. Giftports, Inc.,* 758 F.3d 493, 498 (2d Cir. 2014).

The plaintiff in this matter is proceeding *pro se*. It is well-established that "[*p*]*ro se*

complaints 'must be construed liberally and interpreted to raise the strongest arguments that they

suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d

90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### 2.   *Plaintiff's Standing*

The City Defendants seek dismissal of this case on the ground that the plaintiff lacks

standing. *See* Doc. No. 58-1 at 10. The question of standing, as a jurisdictional question, must be

determined before I may reach the merits of this case. *See Alliance for Env't Renewal, Inc. v.*

*Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). The defendants argue that the injuries

alleged by Blinkoff in her amended complaint "relate solely to financial injuries to B&B Group,"

Blinkoff's corporation. Doc. No. 58-1 at 10. As an "individual shareholder," defendants argue,

Blinkoff has no standing to litigate on behalf of the corporation. *Id*.

Blinkoff, however, alleges in her amended complaint that she "owned and operated" her

quarry, and that the "quarry was [her] sole income and profession." Doc. No. 53 at ¶¶ 2, 23.

When her excavation permit was denied, Blinkoff alleges that she could not keep her business

anymore due to the costs she incurred on attorneys and the financial setbacks she experienced as a result of the restrictions on her business operations. *See id.* at ¶ 73.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to show standing], for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up and citation omitted). Thus, on the basis of Blinkoff's factual allegations, including those I liberally construe, Blinkoff appears to have operated her quarry business as a sole proprietorship, such that she "retain[ed] personal liability for all preconversion debts and obligations." *Labrie Asphalt & Const. Co. v. Quality Sand & Gravel, Inc.*, 2001 WL 286843, at *6 (D. Conn. Mar. 19, 2001) (citation omitted). If B&B Group is "simply the name under which [Blinkoff] personally does business," then she has standing because she "suffered direct financial harm as a result of the defendants' alleged conduct." *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 638 (1st Cir. 2013). In the alternative, even if B&B Group is a "separate corporate entity," she still has standing because "the defendants' actions, although taken against [her] business rather than against [Blinkoff] herself, caused [her] 'actual financial injury' by driving [B&B Group] out of business." *Id.* (quoting *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990)). Accordingly, Blinkoff has satisfied a showing of standing sufficient for this stage of the pleadings.

### 3. *Plaintiff's Fraud on the Court Claim*

In her amended complaint, Blinkoff brings one count of fraud on the court against defendants Nicole Dorman, David Frascarelli, the City of Torrington, and the Planning & Zoning Commission. *See* Doc. No. 53 at 5. For reasons detailed below, Blinkoff's fraud on the court claim is dismissed with prejudice.

a.   Fraud on the Court Claim Against Dorman

Dorman has filed a motion to dismiss Blinkoff's claims against her, arguing, in part, that "all of the plaintiff's claims against [Dorman] are barred by the doctrines of res judicata and collateral estoppel." Doc. No. 60 at 1. For the reasons discussed below, Blinkoff's fraud on the court claim against Dorman is precluded by my judgment in the 2006 Case, in which I denied a virtually identical claim of fraud on the court. Furthermore, even if Blinkoff's claim was not precluded, Blinkoff's facts and exhibits do not support her claim that Dorman committed fraud on the court.

i.   <u>Res Judicata</u>

Blinkoff did not win the 1997 Case, but that case was hardly frivolous. Indeed, a reasonable jury could have ruled in her favor instead of for the defendants. Nevertheless, it is a well-settled principal in our judicial system that "[o]nce a court has decided an issue, it is 'forever settled as between the parties.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (quoting *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522, 525 (1931)). That essential principle, which underlies the doctrine of res judicata, does not promise perfect outcomes for all litigants. Indeed, there are many litigants who believe the outcomes conferred on them by the legal system were incorrect, or even unjust. Nevertheless, "[t]here is a consensus that [the principle is] 'firmly fixed in the firmament of federal jurisprudence.'" *Clark-Cowlitz Joint Operating Agency v. F.E.R.C.*, 775 F.2d 366, 373 (D.C. Cir. 1985) (quoting *Faucett Assocs., Inc. v. AT & T*, 744 F.2d 118, 125 (D.C. Cir. 1984)).

The doctrine of res judicata serves not only the interests of the private parties, but also the interests of the public, including the importance of "avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995)

11

(citation omitted). The doctrine "provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *In re Teltronics Servs., Inc*., 762 F.2d 185, 190 (2d Cir. 1985) (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948); *Cromwell v. Sac Cnty*., 94 U.S. 351, 352 (1876)).

"[O]ne of the critical factors in determining whether a judicial determination is a final judgment for purposes of res judicata is whether it is also a final judgment for purposes of appeal." *Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 147 (D. Conn. 2005), *aff'd sub nom*., *Tibbetts v. Levin*, 288 F. App'x 743 (2d Cir. 2008) (quoting *Cadle Co. v. Drubner*, 303 F. Supp. 2d 143, 147 (D. Conn. 2004)). On December 18, 2007, I entered judgment for the defendants in the 2006 Case and closed the 2006 Case. *2006 Case*, Doc. No. 234. On December 26, 2007, Blinkoff filed a motion for reconsideration of the judgment. *See 2006 Case*, Doc. No. 235; *see also 2006 Case*, Doc. No. 239. I denied her motion for reconsideration on January 9, 2008. *See 2006 Case*, Doc. No. 240; Doc. No. 241. Blinkoff filed an appeal of the judgment on January 9, 2008. *2006 Case*, Doc. No. 243. The Second Circuit denied her appeal on December 15, 2008. *2006 Case*, Doc. No. 310. Accordingly, my underlying judgment in the 2006 Case is the final judgment for the purpose of res judicata. *See Tibbetts*, 354 F. Supp. 2d at 147. Because my judgment in the 2006 Case addressed the merits of Blinkoff's fraud upon the court claim, my judgment in the 2006 Case was also a judgment on the merits. *See Cinquini v. Donohoe*, 1996 WL 79822, at *6 (N.D. Cal. Feb. 8, 1996).

The second consideration is whether the element of privity is met for the purpose of res judicata. In the Second Circuit, "[i]t is well settled . . . that literal privity" is not required. *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Privity applies if the parties' "interests were adequately represented by another vested with the authority of representation." *Alpert's Newspaper Delivery Inc. v. New York Times Co*., 876 F.2d 266, 270 (2d Cir. 1989). Dorman, the City of Torrington Planning & Zoning Commission, and Frascarelli were all parties to the 2006 Case. Therefore, the new defendants' interests were adequately represented by the defendants in the 2006 Case.

The third res judicata consideration is whether "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot*., 882 F.3d 52, 55 (2d Cir. 2018) (citation omitted). Blinkoff brought a nearly identical fraud on the court claim in the 2006 Case. *See generally 2006 Case*, Doc. No. 3.

Furthermore, other courts have held that res judicata applies to bar successive Rule 60 actions. *See, e.g.*, *Locklin v. Switzer Bros., Inc.*, 335 F.2d 331, 334 (7th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965) ("denial of post-trial motions" may potentially serve as basis for "res judicata of a later independent action to set aside judgment on the same grounds"); *Brown v. Bureau of Reclamation*, 2008 WL 4239006, at *2 (D. Idaho Sept. 11, 2008) (res judicata applied to bar an independent Rule 60(d) action where the plaintiff had previously filed a Rule 60(b) motion in the underlying case); *Morgan Consultants v. Am. Tel. and Tel. Co.*, 546 F. Supp. 844, 848 (S.D.N.Y. 1982) (subsequent attempt to seek Rule 60 relief was barred by res judicata); *see also Beller & Keller v. Tyler*, 120 F.3d 21, 24 (2d Cir. 1997) ("Because Rule 60(b) rulings that are final are appealable, a party who is aggrieved by an adverse ruling on a Rule 60(b) motion

must appeal it or waive any complaints about the ruling.") (quoting 12 Moore's Federal Practice § 60.69); *Hughes v. McMenamon*, 379 F. Supp. 2d 75, 79 (D. Mass. 2005) ("Res judicata applies to successive Rule 60(b) motions and independent Rule 60(b) actions.").

     ii. <u>Applicability of the Fraud on the Court Exception to Res Judicata</u>

  The plaintiff argues that res judicata does not apply in this case because evidence was fraudulently concealed. Although "newly discovered evidence" is generally not an exception to res judicata, an "[e]xception[] to this rule exist[s] when the evidence was . . . fraudulently concealed." *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir.1991). "Fraud is an exception to the application of *res judicata* when there has been a fraud on the court; the exception does not apply just because common law fraud claims are asserted against an opposing party." *Sanders v. Sanders*, 2021 WL 4392053, at *11 (S.D.N.Y. Sept. 24, 2021), *aff'd*, 2022 WL 16984681 (2d Cir. Nov. 17, 2022).

  In order to determine whether the fraudulently concealed evidence exception applies, I consider whether "fraud on the court" was committed in connection with the 2006 Case.[3] There is a high bar to a successful showing of fraud on the court. It is "not your garden-variety fraud." *United States v. Higgs*, 193 F. Supp. 3d 495, 507 (D. Md. 2016) (citation omitted). "Fraud upon the court . . . is limited to fraud which seriously affects the integrity of the normal process of adjudication." *King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988)) (cleaned up). It is limited "only [to] that species of fraud which does or attempts to, defile the court itself, or is a fraud

---

[3] Blinkoff brings a "fraud on the court" claim in her amended complaint, alleging that fraud on the court was committed by the defendants in connection with the 1997 Case. *See* Doc. No. 53. She brought a nearly identical claim in the 2006 Case, however, where she also alleged that the defendants had committed fraud on the court in connection with the 1997 Case. *See 2006 Case*, Doc. No. 3. Because, here, I analyze whether res judicata applies to bar re-litigation of the 2006 Case, the question before me is not whether there was fraud on the court in the 1997 Case, but whether there was in the 2006 Case.

perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (quoting *Kupferman v. Consol. Rsch. & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972)).

In *United States v. Throckmorton*, the Supreme Court contemplated fraud on the court as an exception to res judicata for cases where "there was in fact no adversary trial or decision of the issue in the case." 98 U.S. 61, 65 (1878). As one of several examples, the Supreme Court noted the situation "[w]here the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, [or] a false promise of a compromise." *Id.* Other conduct that has been held to constitute fraud on the court includes "bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of improperly influencing the judge." *Denny v. Ford Motor Co.*, 959 F. Supp. 2d 262, 268 (N.D.N.Y. 2013) (quoting *United States v. Bennett*, 2004 WL 736928, at *2 (S.D.N.Y. Apr. 5, 2004)). In general, perjury by a witness does not amount to fraud on the court. *See Gleason*, 860 F.2d at 559 ("After-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of 'fraud upon the court.'"); *In re Golf 255, Inc.*, 652 F.3d 806, 809-10 (7th Cir. 2011); *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987).

Blinkoff argues that Attorney Dorman committed fraud on the court during the 2006 Case when she lied under oath about telling Carpentino he was not needed for the remainder of the 1997 Case's trial. *See* Doc. No. 53 at 8-9; *id.* at 87 (transcript). Blinkoff also alleges that Dorman "testified falsely" at the 2006 Case's trial regarding her phone calls with Carpentino. *See id.* at ¶ 44. Blinkoff alleges that I relied on Dorman's fraudulent representations when I ruled

15

in favor of the defendants and entered judgment for the defendants in the 2006 Case. *Id*. at 11. On August 26, 2011, Blinkoff deposed Attorney Dorman and questioned her again about her calls to Carpentino. *See id*. at ¶ 49. During that deposition and in subsequent responses to requests to admit, Blinkoff alleges that Attorney Dorman contradicted her previous testimony from the 2006 Case's trial. *See id.* at ¶¶ 49-56. On the basis of those supposed contradictions, Blinkoff argues that Dorman committed fraud upon the court.

> (i)  Whether Dorman Acted as an Officer of the Court During the 2006 Case

An attorney acting as an officer of the court can commit fraud on the court. *Kupferman*, 459 F.2d at 1078 ("[A]n attorney['s] . . . loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court."); *see also In re Tri-Cran, Inc*., 98 B.R. 609, 617 (Bankr. D. Mass. 1989) ("The list of persons against whom a cause of action for fraud on the court may be brought thus includes attorneys appearing before the court as officers of the court."). The involvement of an attorney in an act of fraud can elevate that fraud such that it constitutes fraud on the court. *See In re Golf 255, Inc*., 652 F.3d at 809-10 ("a witness's lies are not fraud on the court unless a lawyer in the case is complicit in them"); *see also Cleveland Demolition Co.*, 827 F.2d at 986.

Nevertheless, "an attorney may function as an 'officer of the court' under some circumstances, but not others." *Glenwood Farms, Inc. v. O'Connor*, 666 F. Supp. 2d 154, 179 (D. Me. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 430-31 n.33 (1976) (stating that a prosecutor at times acts as an officer of the court, and at times acts as an administrator)). Attorneys are officers of the court for fraud on the court purposes "when they appear in a representative capacity." *Id*. at 180 (citing *Pearson v. First NH Mortgage Corp*., 200 F.3d 30, 38

16

(1st Cir. 1999)). Indeed, case law explicating the attorney's role as an "officer of the court" generally contemplates that the attorney acts as such an officer when appearing as a representative for a client. *See, e.g.*, *Kupferman*, 459 F.2d at 1078; *Unanue-Casal v. Unanue-Casal*, 898 F.2d 839, 842 (1st Cir. 1990); *Steinle v. Warren*, 765 F.2d 95, 101 (7th Cir. 1985); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Glenwood Farms, Inc.*, 666 F. Supp. 2d at 180. Moreover, in cases where attorneys were held to have perpetrated fraud on the court, those attorneys generally participated in a fraudulent scheme while acting in a representative capacity for a client. *See, e.g.*, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 247 (1944); *see also Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982) (witness perjury, which normally does not suffice, can constitute fraud on the court if an attorney is involved "in a *scheme* to suborn the perjury") (emphasis added).

Thus, whereas fraud by attorneys serving in a representative capacity could rise to the level of fraud on the court, the same cannot be said when attorneys merely serve as witnesses and parties. *Glenwood Farms, Inc.*, 666 F. Supp. 2d at 180; *see also Leeson v. Chernau*, 734 S.W.2d 634, 637 (Tenn. Ct. App. 1987) ("While the Court does not condone the false testimony given by [the attorney] at the . . . hearing, any false testimony given by him in that case . . . was given as a party and witness in the case and was not testimony given in his capacity as an attorney or officer of the court.").

When Dorman testified at the trial of the 2006 Case, she testified as a party to the case and not in her representative capacity as an officer of the court. *See generally 2006 Case* (listing Dorman as a defendant represented by Scott Karsten as counsel). At the trial of the 2006 Case,

Dorman was directly examined by her counsel, Scott Karsten, and cross-examined by Attorney Jon Berk. *See* Doc. No. 53 at 85-86.

Blinkoff argues that an attorney need not formally represent a party in a case in order for that attorney to nevertheless be an officer of the court with respect to that case. As a general matter, she is correct. However, in all the cases she cites, those attorneys nevertheless acted in a representative capacity. *See* Doc. No. 88 at 1-2.

For example, in the Third Circuit decision cited by Blinkoff, *Herring v. United States*, the Secretary of the Air Force filed a "Claim of Privilege" asserting that documents at issue in the case contained privileged state secrets, and the Judge Advocate General of the Air Force also filed an affidavit stating that revealing the documents would hinder national security. 424 F.3d 384, 388 (3d Cir. 2005). In determining whether the documents filed by the Secretary and the Judge Advocate General of the Air Force constituted fraud on the court, the Third Circuit analyzed whether those officials were officers of the court. Both the Secretary and the Judge Advocate General of the Air Force were lawyers, but "they did not represent the United States in the litigation sought to be reopened." *Id.* at 390. Nevertheless, the Third Circuit determined that both officials had acted as "officers of the court" because, in submitting "the formal claim of privilege on behalf of the Government," they had in fact "represented[ed] the United States Air Force's claim of privilege over a document central to that litigation." *Id.* at 390-91. Thus, although the officials were not technically retained as attorneys for the government in that case, they had, in effect, held themselves out as officers of the court and had served in a representative capacity.

Blinkoff also cites *Pumphrey v. K.W. Thompson Tool Co.*, a Ninth Circuit decision that is similarly distinguishable. 62 F.3d 1128 (9th Cir. 1995). *Pumphrey* concerned a fraud on the court

claim against an attorney who served as general counsel and vice president for the defendant

company, and no one at the company "differentiated" between his activities as vice president and

his activities as general counsel." *Id*. at 1130-31. The attorney had not filed an appearance or

signed any court documents in a case that took place in a district in which he was not admitted to

practice. *Id*. Nevertheless, the attorney had "participated significantly" in the case, "attend[ed]

the trial on [the defendant company's] behalf, gather[ed] information to respond to discovery

requests and fram[ed] the answers, and participat[ed] in the videotaping of both the trial video

and the original video." *Id.* The attorney's participation in *Pumphrey*, therefore, "consisted of

more than action simply in [a corporation] officer's capacity." *Id*. (quoting *NCK Organization,*

*Ltd. v. Bregman*, 542 F.2d 128, 133 (2d Cir. 1976)).

Furthermore, *In re Morisseau*, 763 F. Supp. 2d 648 (S.D.N.Y. 2011); *Notopoulos v.*

*Statewide Grievance Comm.*, 277 Conn. 218 (2006); and *Zappin v. Comfort*, 2015 WL 5511519

(N.Y. Sup. Ct. Sept. 18, 2015)—all cited by Blinkoff—are also distinguishable. In all three

cases, the courts held that an attorney's "status as a *pro se* litigant does not exempt her from" the

rules of professional conduct and disciplinary rules. *In re Morisseau*, 763 F. Supp. 2d at 652; *see*

*also Notopoulos*, 277 at 232 (rules of professional conduct applied to attorney's *pro se*

statements) (quoting *Matter of Presnick*, 19 Conn. App. 340, 345 (1989)); *Zappin*, 2015 WL

5511519, at *5 (same).[4]

Dorman was not a *pro se* attorney in the 2006 Case; she was a defendant represented by

counsel. *See generally 2006 Case* (listing Dorman as a defendant represented by Scott Karsten as

---

[4] Blinkoff also cites *In re Tri-Can, Inc.*, 98 B.R. 609 (Bankr. D. Mass. 1989), but that case is inapposite to the case at bar. In that case, the court stated that "[i]n a bankruptcy proceeding, 'the debtor in possession is a fiduciary not only to its creditors but to the bankruptcy court,'" and on that basis the court determined that a "debtor in possession is an officer of the court." *Id*. at 617 (citation omitted).  Blinkoff also cites *Conant v. O'Meara*, a Supreme Court of New Hampshire decision that is also distinguishable. There, the court determined that a lawyer who had testified as a fact witness in an arbitration acted as an officer of the court in part because the court had previously "found [his] arbitration testimony to be grounds for disbarment." *Conant v. O'Meara*, 167 N.H. 644, 655 (2015).

counsel); *see also* Doc. No. 53 at 85-86 (showing Dorman was examined by counsel at the trial of the 2006 Case). A *pro se* attorney acts as a legal representative for herself, while a counseled defendant—be she a lawyer or a non-lawyer—does not.[5] Moreover, there is no reason to conclude that, in the scope of the 2006 Case, the Court afforded any deference to Dorman's "experience, expertise and truthfulness" the way the Court might ordinarily afford deference to an officer of the court. *Cf. Herring*, 424 F.3d at 390. Dorman therefore did not serve in a representative capacity in the 2006 Case—neither in name nor in effect.[6] Accordingly, her participation in that case may not be likened to that of an officer of the court for fraud on the court purposes.

Because Dorman was not an officer of the court in the 2006 Case, even if she indeed perjured herself at the 2006 Case's trial as Blinkoff alleges, that perjury merely constitutes witness perjury. Witness perjury is a type of fraud that does not rise to the level of fraud on the court. *See Gleason*, 860 F.2d at 559. Thus, Blinkoff's claim that a res judicata exception based on fraud on the court applies cannot rest solely on her allegation that Dorman perjured herself at the trial of the 2006 Case.

(ii) Sufficiency of Plaintiff's Fraud Allegation Against Dorman

Even assuming *arguendo* that Dorman was acting as an officer of the court, Blinkoff has not satisfied her burden of showing that Dorman committed fraud on the court in connection with the 2006 Case. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Blinkoff alleges that, at the trial of the 2006

---

[5] It is also not clear from the cases cited by the plaintiff that an "officer of the court" in the context of the rules of professional conduct is the same as an "officer of the court" in the context of a fraud on the court claim.
[6] In her briefing, Blinkoff argues that Dorman represented herself in the 2011 Connecticut Case. *See* Doc. No. 88 at 1. Whether or not Dorman served in a representative capacity in the 2011 Connecticut Case does not bear on whether Dorman served in a representative capacity in the 2006 Case, however.

Case, Dorman falsely testified when she relayed certain facts regarding communications she had with Carpentino during the April 2002 trial of the 1997 Case.

Specifically, the following facts are supported by Blinkoff's amended complaint and exhibits: Dorman had a conversation with Carpentino on April 5, 2002 at 1:20 p.m. during which she arranged for him to be available to testify on April 8, 2002. Doc. No. 53 at 10-11. She also had two other conversations with Carpentino on April 8, 2002 at 12:51 p.m. and 1:25 p.m. *Id*. at 10-11, 87. Dorman testified during the 2006 Case that during one of those conversations, Dorman told Carpentino that he would not be needed in court that day but that he would likely be needed on April 12, 2002. *Id*. Carpentino then told her that his daughter had a doctor's appointment on the morning of April 12, 2002 and that he would not be available that morning. *Id.* at 10-11, 87-89. Dorman also called Carpentino on April 9, 2002. *Id*. at 11, 89. In addition, Dorman spoke to Carpentino on April 10, 2002 to coordinate his court appearance for April 12, 2002. *See id*. at 11, 89.[7]

Blinkoff contends that in a deposition Dorman gave in the 2011 Connecticut Case, Dorman contradicted the testimony she had given at the trial of the 2006 Case. The contradiction, Blinkoff argues, reveals that Dorman committed fraud on the court in the 2006 Case. Blinkoff bases her contention on her interpretations of three statements from Dorman during the 2011 Connecticut Case: deposition testimony in which Dorman "admitted she told Mr. Carpentino on April 8th that he was not needed for the trial," *id*. at ¶ 49; Dorman's responses to requests to admit in which Dorman "could not admit or deny she had a conversation with Mr.

---

[7] By contrast to Dorman's testimony, Carpentino testified at the trial of the 2006 Case that he received only one phone call from Dorman on April 5, 2002, during which Dorman told him he would not be needed for the remainder of the trial. Doc. No. 53 at ¶ 45.

Carpentino" on April 5, 10, or 12, 2002, *id.* at ¶ 54; and Dorman's "deni[al] [that] she ever

testified she 'spoke to' Mr. Carpentino," *id.* at ¶ 53.

The exhibits appended to Blinkoff's amended complaint do not support those

interpretations, however. "Where a conclusory allegation in the complaint conflicts with a

statement made in a document attached to the complaint, the document controls and the

allegation is not accepted as true." *Francis v. Carusso*, 2022 WL 16716172, at *10 (D. Conn.

Nov. 4, 2022) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 502

(S.D.N.Y. 2009)). Accordingly, to the extent that any allegations in Blinkoff's amended

complaint and exhibits conflict, I will accept the information in the exhibits as true.

First, Blinkoff claims that Dorman "admitted" she told Carpentino on April 8, 2002 that

he would not be needed for the remainder of the trial. *See* Doc. No. 53 at ¶ 49. Dorman's

deposition testimony in fact reveals no such admission:

> Dorman: It looks like at 12:51 there was a call to [Carpentino's] home
> number in Cheshire and at 5:21—Oh, there was also a call at 1:25 to his
> place of business. And then at 5:21 there was another call to his home.
>
> Blinkoff: That's when you told [Carpentino]?
>
> Dorman: I can only testify that I called him.
>
> Blinkoff: Okay. But [Carpentino] knew at that point that he was not
> needed for the trial.
>
> Dorman: He was informed on the eighth because he never showed up.

*Id.* at 11-12 (cleaned up and emphasis removed). Dorman's testimony cannot support the

inference the plaintiff seeks to make, even construing the plaintiff's allegations liberally. As a

preliminary matter, Dorman did not testify in her deposition that, on April 8th, 2002, she told

Carpentino he was not needed for the remainder of the trial. In fact, reading the deposition

excerpt in concert with Dorman's testimony at the 2006 Case tells a different story. As excerpts

included by Blinkoff show, Dorman testified at the trial of the 2006 Case that she had a phone

conversation with Carpentino on April 8th in which she told him he would not be needed for the

trial *for the rest of that day*. *See id.* at 10. Blinkoff's excerpts and factual allegations thus cannot

reasonably support the conclusion she reaches. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.").

Second, Dorman's responses to Blinkoff's requests for admission also do not support

Blinkoff's fraud on the court claim. Blinkoff asked Dorman to admit the following: that she "did

not have a conversation with Mr. Carpentino at 1:20 p.m. on Friday, April 5th, 2002"; that she

"did not have a conversation with Mr. Carpentino at 4:00 p.m. on Wednesday, April 10th, 2002";

that she "did not have a conversation with Mr. Carpentino on Friday, April 12, 2002." *See* Doc.

No. 53 at 40-41. Dorman repeated the same answer to all requests, stating:

> This defendant cannot admit or deny since her cell phone records reflect a
> telephone call to Mr. Carpentino's office at [the dates and times at issue].
> In addition, as reflected in defendant's testimony before the Honorable
> Stefan Underhill and the court's subsequent rulings, the defendant did
> speak to Mr. Carpentino during some of her calls to him in 2002.

*Id.* Dorman's responses to Blinkoff are not inconsistent with the testimony she gave at the trial of

the 2006 Case. Further, that Dorman declined to "admit or deny" a fact she testified to four years

earlier is not a sufficient basis for the claim that Dorman testified fraudulently in the 2006 Case.

*See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . ., a party must state with particularity the

circumstances constituting fraud.").

Finally, Blinkoff's allegation that Dorman contradicted herself in the 2011 Connecticut

case by "den[ying] she ever testified she 'spoke to' Mr. Carpentino" is also unsupported by

Blinkoff's exhibits. *See id.* at ¶ 53. During Dorman's deposition in the 2011 Connecticut Case,

Blinkoff asked Dorman about a two-minute call placed to Winsted, Connecticut:

> Blinkoff: Is that the call you're claiming you spoke to Mr. Carpentino on?
>
> Dorman: I did not say I spoke to him.
>
> Blinkoff: You did not say that you had a conversation at any time, including the December 3, 2007 evidentiary hearing, you did not say you had a conversation with Mr. Carpentino?
>
> Mr. Berk: Objection to form.
>
> Mr. Blumenfeld: Objection to form.
>
> Mr. Durham: Objection as to form.
>
> Dorman: Objection as to form.
>
> Dorman: You asked me about my responses to your requests for admission. I can only tell you that there is a cell phone call to Winsted, Connecticut at a number that at the time was Mr. Carpentino's place of business and it logged in at two minutes.
>
> Blinkoff: And you never testified—you're claiming that you never testified that you had a conversation with Mr. Carpentino on that date; right?
>
> Dorman: I would have to review the transcript of my testimony at the evidentiary hearing to be able to answer that question.

*Id*. at 27 (cleaned up). In the excerpt of the deposition transcript provided by Blinkoff, Dorman

responds to a question posed by Blinkoff by stating, "I did not say I spoke to [Carpentino]." *Id*.

Blinkoff then attempts to characterize Dorman's response to mean Dorman *never* testified to

speaking to Carpentino. Blinkoff's characterization was immediately met by objection from

Dorman and her attorneys, followed by a restatement by Dorman. From this exchange, it would

be unreasonable for me to infer that Dorman intended to communicate that she had never

testified about speaking to Carpentino. The deposition transcript provided by Blinkoff is

therefore plainly insufficient to support Blinkoff's conclusion.

Separately, Blinkoff also appears to allege that Dorman fraudulently concealed her phone records from the trial of the 2006 Case. *See* Doc. No. 53 at ¶ 38. It is the Court, however, that did not admit the phone records into evidence at the trial of the 2006 Case. *See 2006 Case*, Doc. No. 214 (Blinkoff's motion requesting that the Court review the phone records that Dorman "testif[ied] from" at the trial); Doc. No. 220 (Court's order denying Blinkoff's motion because "[t]he phone records were not admitted into evidence"); Doc. No. 227 (Blinkoff's motion for reconsideration of the evidentiary ruling); Doc. No. 233 (Court's ruling denying Blinkoff's motion for reconsideration). Blinkoff has not therefore pled adequate facts showing that Dorman fraudulently concealed the phone records.

Accordingly, even if Blinkoff's claim against Dorman was not barred by res judicata, Blinkoff nevertheless has not pled sufficient facts supporting her claim that Dorman acted fraudulently during the 2006 Case.

                b.   Fraud on the Court Claim Against City of Torrington, Planning & Zoning Commission, and David Frascarelli

Regarding Blinkoff's fraud on the court claim against the City of Torrington, Planning & Zoning Commission, and David Frascarelli, Blinkoff does not assert sufficient factual allegations to support their liability for the claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's knowledge may be alleged generally." Fed. R. Civ. P. 9(b). In her amended complaint, Blinkoff alleges that the City of Torrington's attorneys declined to admit when Dorman had her conversations with Carpentino. Doc. No. 53 at ¶ 56; *id*. at 43-44. Beyond that allegation, Blinkoff makes no allegations that might support a claim that those defendants committed fraud upon the court in the 2006 Case. In later briefing, Blinkoff argues that the City Defendants are "bound by the acts" of Dorman as their "lawyer-agent" are therefore proper

defendants. *See* Doc. No. 88 at 8-9 (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)); *see also* Doc. No. 95 at 6-7. *Link* held that a client may be penalized with dismissal of their case after their attorney failed to appear at a hearing. 370 U.S. at 633-34, 636. That does not mean, however, that an act of fraud committed by an attorney is necessarily imputed to the attorney's clients absent any factual allegations supporting such an inference.[8] *Cf. Hazel-Atlas*, 322 U.S. at 240-42 (describing the defendant's involvement in a fraudulent scheme principally executed by the defendant's lawyer).

Furthermore, for the same reasons res judicata applies to bar Blinkoff's fraud on the court claim against Dorman, res judicata applies to preclude Blinkoff's claims against the City of Torrington, Planning & Zoning Commission, and David Frascarelli. I am therefore precluded from relitigating the "fraud on the court" claim previously raised and ruled upon in the 2006 Case. Accordingly, the plaintiff's fraud on the court claim is **dismissed with prejudice** against all defendants.

### 4.  *Plaintiff's Equal Protection Claim*

Blinkoff also seeks to bring a new Section 1983 claim against the City Defendants. For the reasons discussed below, Blinkoff's equal protection claim is precluded by the doctrine of res judicata.

Like Blinkoff's fraud on the court claim, the doctrine of res judicata applies to Blinkoff's equal protection claim if "a court of competent jurisdiction has entered a final judgment on the

---

[8] In later briefing, *see, e.g.*, doc. no. 81 at 8-9, Blinkoff offers an argument for why Dorman's conduct should be imputed to the other defendants. She argues that the City of Torrington's counsel attended Dorman's deposition in the 2011 Connecticut Case and that the defendants have access to Dorman's motion to dismiss in the instant case, in which Dorman contradicted herself. *See id.* That argument is not included in Blinkoff's amended complaint, and even if Blinkoff had included the argument, I would have dismissed it. As detailed above, Blinkoff did not establish that Dorman's deposition in the 2011 Connecticut Case revealed fraud on the court. Moreover, any contradictions Dorman might have made in her briefing for the instant case do not bear on whether there was fraud on the court in the 2006 Case.

26

merits," if the previous action involved the same parties or their privities, and if "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *In re Teltronics Servs.,* 762 F.2d at 190; *Soules*, 882 F.3d at 55 (citation omitted).

In the 1997 Case, Blinkoff brought two equal protection claims against, *inter alia*, the City of Torrington Planning & Zoning Commission, members of the Planning & Zoning Commission, and David Frascarelli. In her claims, she alleged that she had faced discrimination on the basis of her gender and religion, and that she had been subjected to selective enforcement in violation of the Equal Protection Clause. After a trial in April 2002 in which the jury found for the defendants, I entered judgment on the merits for the defendants. *1997 Case*, Doc. No. 156; Doc. No. 162. Blinkoff filed a notice of appeal on May 9, 2002. *1997 Case*, Doc. No. 163. On August 20, 2003, the Second Circuit dismissed Blinkoff's appeal with prejudice. *1997 Case*, Doc. No. 182. Thus, the underlying judgment in the 1997 Case, *1997 Case*, Doc. No. 162, is the final judgment on the merits for the purpose of res judicata. *See Tibbetts*, 354 F. Supp. 2d at 147.

In her latest case, Blinkoff adds new defendants not previously included in the 1997 Case. Those new defendants include Gregory Perosino, a member of the Planning & Zoning Commission, whom she sues in his official capacity; and Greg Mele, Chairman of the Planning & Zoning Commission, whom she also sues in his official capacity. Doc. No. 53 at ¶¶ 15-17. In her new action, Blinkoff also sues the City of Torrington and the Planning & Zoning Commission as two separate entities, whereas in the 1997 Case she sued the Planning & Zoning Commission of the City of Torrington as a single defendant. *See generally 1997 Case*, Doc. No. 44. The Planning & Zoning Commission "is a commission of the City of Torrington," a Connecticut municipality. Doc. No. 53 at ¶ 15. Because Planning & Zoning Commission of the City of Torrington was originally party to the 1997 Case, the new defendants' "interests were

adequately represented by another vested with the authority of representation." *Alpert's Newspaper Delivery*, 876 F.2d at 270. Privity is therefore established for the purpose of res judicata.

The final res judicata element is whether "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules*, 882 F.3d at 55 (citation omitted). "To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000); *see also TechnoMarine*, 758 F.3d at 499 ("Whether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'") (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)).

Blinkoff argues that her latest equal protection claim "could not have been brought" in the 1997 Case "because it had not occurred yet," and "therefore no res judicata applies." Doc. No. 53 at ¶ 96. In some circumstances, "[w]hen a subsequent action involves a claim over 'ongoing conduct' and it relies on facts that occurred both before and after the earlier action commenced," res judicata will not apply with respect to "'legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts.'" *TechnoMarine*, 758 F.3d at 501 (citation omitted).

Blinkoff is incorrect, however, in arguing that her new equal protection claim could not have been brought in the original case. In the 1997 Case, Blinkoff in fact brought two claims of

denial of equal protection, one based on gender and/or religious discrimination and one based

selective enforcement. *1997 Case*, Doc. No. 44 at 15, 18. She brought her equal protection

claims against virtually the same defendants and concerning many of the same underlying facts.

All of Blinkoff's facts concerning the discriminatory and selective enforcement of zoning

ordinances and regulations against her quarry occurred in the timeframe of the 1997 Case. Once

Blinkoff sold her quarry, the discriminatory and selective enforcement violation on which she

bases her claim ceased. Since 2018, Blinkoff has identified a new comparator through which she

may theoretically bolster her discrimination and selective enforcement claim. That comparator

constitutes new *evidence* in support of her previous claim, but that comparator does not make her

claim or her injury new. The existence of an additional comparator "do[es] not create a 'new'

cause of action that did not exist when the prior suits were brought.'" *Casciani v. Town of

Webster*, 815 F. Supp. 2d 616, 621 (W.D.N.Y. 2011) (citation omitted); *see also TechnoMarine*,

758 F.3d at 502 ("[T]he mere inclusion" of a "few . . . acts" postdating the judgment in a case

cannot be used "to resurrect a claim, grounded almost entirely upon . . . events [preceding the

prior litigation].") (quoting *Waldman*, 207 F.3d at 114).

Blinkoff argues that her "equal protection claim did not accrue until" November 12,

2018, when "she discovered" O&G's operation of the quarry. *See* Doc. No. 82-1 at 11; Doc. No.

53 at 114. It has been held in other circuits and in other contexts that "the accrual date" of a

cause of action may "determine[] whether [a plaintiff] was required, by principles of res judicata,

to assert its claims" in the first suit. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 385 (5th

Cir. 2007). Nevertheless, Blinkoff's equal protection claim began to accrue when "the

constitutional violation [was] complete and [she] ha[d] a present cause of action." *Paramount

Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d 914, 920 (7th Cir. 2019). "[A] cause of action

accrues, and the statute of limitation commences to run, when the wrongful act or omission results in damages." *Id*. (internal quotations and citation omitted). Based on her allegations, Blinkoff already had been subjected to selective enforcement at the time of the 1997 Case, and she and her counsel had already alleged facts in support of both a class-of-one equal protection claim and a selective enforcement equal protection claim in the 1997 Case, including facts identifying "similarly situated" businesses. *See 1997 Case*, Doc. No. 44 at 15, 18. In addition, the injuries Blinkoff alleges she sustained as a result of the alleged violations began in the timeframe of the 1997 Case. *See* Doc. No. 53 at ¶ 73; *see also* Doc. No. 70 at 15. Blinkoff and her counsel were therefore aware as early as 1997 that she had the basis for an equal protection claim based on a class-of-one theory or a selective enforcement theory. *Cf. Dique v. New Jersey State Police*, 603 F.3d 181, 188 (3d Cir. 2010) (tolling the accrual date of a selective enforcement action where it was not until eleven years later, "when [the plaintiff's] attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices, that [the plaintiff] discovered, or by exercise of reasonable diligence should have discovered, that he might have a basis for an actionable claim"). The date on which a claim accrues is not the date on which the plaintiff has the strongest possible case. Blinkoff may now have discovered new evidence that might bolster her equal protection claim, but that new evidence does not mean that her claim was not already actionable at the time of the 1997 Case.

"As a general rule, newly discovered evidence does not preclude the application of *res judicata*." *Saud*, 929 F.2d at 920. There is an exception, however, if the evidence "could not have been discovered with due diligence." *Id*. Accepting Blinkoff's allegations as true, Blinkoff could not have discovered the evidence of the new comparator until 2018, even with due diligence.

Because Blinkoff asserts new evidence in support of her equal protection claim that she could not have discovered even with due diligence, an exception to res judicata may apply.

Even if Blinkoff's equal protection claims could fall under an exception to res judicata based on evidence not previously discoverable, however, the new evidence she alleges cannot support a class-of-one or selective enforcement equal protection claim. Under a class-of-one equal protection claim, a plaintiff must show that "(1) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (2) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Hu v. City of New York*, 927 F. 3d 81, 92 (2d Cir. 2019) (cleaned up). To successfully state a class-of-one claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005). Moreover, "[t]he 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Beard v. Town of Monroe*, 666 F. App'x 62, 65 (2d Cir. 2016) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (Breyer, J. concurring)). In particular, "[i]n the land-use context, timing is critical and, thus, can supply an important basis for differential treatment." *Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007); *see also Gray v. Town of Easton*, 115 F. Supp. 3d 312, 319 (D. Conn. 2015), *aff'd sub nom.*, *Gray v. Maquat*, 669 F. App'x 4 (2d Cir. 2016) (same); *Pappas v. Town of Enfield*, 18 F. Supp. 3d 164, 183 (D. Conn. 2014), *aff'd*, 602 F. App'x 35 (2d Cir. 2015) (same).

Blinkoff has proffered facts in an attempt to support her contention that her comparator O&G industries is similarly situated. *See, e.g.*, Doc. No. 53 at 114-136; Doc. No. 53-1. Those facts, however, do not negate the temporal difference of over two decades between Blinkoff, whose proposal was denied in 1997, and her comparator, which obtained its permit in 2021. *See* Doc. No. 53 at ¶ 92; *1997 Case*, Doc. No. 44 at ¶ 44. Case law cited by Blinkoff in support of her equal protection claim is also distinguishable because those cases lack the temporal discrepancy that undermines Blinkoff's claim. Doc. No. 88 at 7-8; Doc. No. 95 at 1-3, 5; *see, e.g.*, *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 458 (E.D.N.Y. 2002) (approximately one-year temporal difference between plaintiff and comparators); *13391 Broadway LLC v. Vill. of Alden*, 2020 WL 7028601, at *2 (W.D.N.Y. Nov. 30, 2020) (comparator was plaintiff's immediate successor, and there was approximately a two-year temporal difference); *Ossler v. Vill. of Norridge*, 557 F. Supp. 219, 221 (N.D. Ill. 1983) (plaintiff and comparator were regulated differently "[a]t the same time"); *Manatuck Assocs. v. Wendt*, 1997 WL 766858, at *8-*9 (D. Conn. Nov. 21, 1997) (comparator was plaintiff's immediate successor, and there was a four- to six-year temporal difference).

Furthermore, *545 Halsey Lane Properties*, another case cited by Blinkoff, is also distinguishable. *545 Halsey Lane Properties, LLC v. Town of Southampton*, 39 F. Supp. 3d 326 (E.D.N.Y. 2014); *see* Doc. No. 95 at 3. In that case, the Eastern District of New York upheld a class-of-one claim where a predecessor-in-title had received a permit fourteen years before the plaintiff was denied one. 39 F. Supp. 3d at 334-35 (predecessor received permit in December 1997, while the plaintiff was denied one in February 2011). However, the plaintiff first applied for its permit in March 2006—less than nine years after the comparator's permit was granted— and the municipality opposed the application, as well as multiple modifications proposed by the

32

plaintiff, before the plaintiff's application was ultimately rejected in 2011. *Id.* Moreover, the

plaintiff in *545 Halsey Lane Properties* also alleged "numerous" other comparators and evidence

that the defendants had taken a contrary position in separate litigation. *See id.* at 345. *545 Halsey

Lane Properties* is therefore distinguishable from the case at bar.[9] Thus, considering the

substantial temporal difference between Blinkoff and her comparator in a land-use context,

Blinkoff cannot possibly show that "no rational person could regard" her circumstances "to

differ" from those of O&G. *See Neilson*, 409 F.3d at 105.

       Nor can Blinkoff's new comparator support a selective enforcement claim. The

requirements for a comparator for a selective enforcement claim are similar to those for a class-

of-one claim. Although "the Second Circuit has yet to specify the degree of similarity between

comparators that must exist to prove a selective-enforcement claim," the theories of a class-of-

one claim and a selective enforcement claim "are so similar, there is little reason to suppose why

a selective-enforcement claim should not require the same high degree of similarity." *Gray*, 115

F. Supp. 3d at 319. However, even if a selective enforcement claim requires a "lower" standard

for showing a "similarly situated" comparator than what is required by a class-of-one theory,

Blinkoff's comparator could not meet that lower bar either. *See Missere v. Gross*, 826 F. Supp.

2d 542, 561 (S.D.N.Y. 2011) (citing courts within the Second Circuit that apply a comparator

similarity standard for selective enforcement claims that is lower than the standard for class-of-

one claims, as well as a court that combined the two standards). Even under a more lenient test,

---

[9] Blinkoff also cites *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010). *See* Doc. No. 95 at 3-4. It appears that Blinkoff interprets the case to hold that the land-use difference between the plaintiffs' property and the comparators' property was the *only* reason why the properties were not similarly situated. On the contrary, however, the Second Circuit highlights the temporal difference between some of the proposed comparators and the plaintiffs—indicating that temporal difference was likely a factor in its determination. *See Ruston*, 610 F.3d at 60 ("[N]one of the properties cited by the [plaintiffs] suffice [as comparators]: a house built in 1987; a country club that was renovated in 'the early 1990's'; two neighboring properties—'connected to the Village sewer system for decades'—that are not further described; a house built 'in or around 2004'; a 'luxury spa' built 'in the late 1990's'; and a 'large commercial building.'").

Blinkoff would need to allege facts showing that she and her comparator are "similarly situated in all material respects" or that "a prudent person, looking objectively at the incidents, would think them roughly equivalent." *Id.* (quoting *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008); *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)). Because "timing is critical" in the "land-use context," a two-decade temporal difference is plainly "material." *Cordi-Allen*, 494 F.3d at 253; *see also Olech*, 528 U.S. at 565 (Breyer, J. concurring). Blinkoff therefore cannot plausibly assert a selective enforcement equal protection claim based on O&G Industries' grant of a permit in 2021.

Because O&G Industries cannot serve as a "similarly situated" competitor to support a class-of-one or selective enforcement equal protection claim, no valid exception to res judicata remains. Accordingly, Blinkoff's equal protection claim is also **dismissed with prejudice**.

Additionally, because I have dismissed both of Blinkoff's claims, the City Defendants' motion to stay discovery is **denied as moot**. *See* Doc. No. 65.

### C.  Plaintiff's Motion for Sanctions

After the hearing I held on March 3, 2023, Blinkoff filed a motion to sanction Dorman. *See* Doc. No. 87. In her motion, Blinkoff argues that Dorman should be sanctioned for two reasons. First, Blinkoff argues that Dorman's deposition in the 2011 Connecticut Case proved she had lied at the trial of the 2006 Case. *See* Doc. No. 87 at 1. Second, Blinkoff claims that Dorman falsely stated that she did not have access to her cell phone bills or trial records during her deposition in the 2011 Connecticut Case. *See id.* Blinkoff further claims that Dorman conceded at the March 3, 2023 hearing that she had lied about Carpentino's availability for the 1997 Case's trial. *See id.* at 2.

34

Blinkoff requests that I sanction Dorman pursuant to my "inherent power to impose sanctions for . . . bad faith conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *see also McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 461-62 (S.D.N.Y. 2002). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. "[A] court should sanction only bad faith, vexatious, or wanton acts or actions otherwise undertaken for oppressive reasons." *International Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (cleaned up and citation omitted). "To impose sanctions based on fraud on the court, 'evidence of [the] unconscionable scheme must be established by clear and convincing evidence.'" *International Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 2019 WL 1244493, at *6 (S.D.N.Y. Mar. 18, 2019) (citation omitted).

Blinkoff has not met her burden of establishing that Dorman's conduct warrants sanctions. As a preliminary matter, for the reasons detailed above, Blinkoff has not shown that Dorman acted fraudulently during the 2006 Case. Moreover, Blinkoff's allegations of Dorman's contradictory statements do not support the imposition of the harsh penalty of sanctions.

One contradiction Blinkoff points to is Dorman's statement in her motion to dismiss, in which Dorman claims she did not have access to the 1997 Case's trial record or her cell phone records during her deposition for the 2011 Connecticut Case. *See* Doc. No. 91 at 18-19; Doc. No. 61 at 5. On that basis, Dorman argues that to the extent thast her deposition in the 2011 Connecticut Case and her testimony in the 2006 Case contradict, Dorman's testimony in the 2006 Case is more reliable. *See* Doc. No. 61 at 5. At her deposition for the 2011 Connecticut Case, Dorman in fact had access both to her cell phone records and to "Evidentiary Hearing Excerpts," from the trial of the 2006 Case.[10] *See* Doc. No. 53 at 26; Doc. No. 91 at 19.

---

[10] In her motion to dismiss, Dorman stated that at the trial of the 2006 Case, she had before her the trial record from the trial of the 1997 Case. *See* Doc. No. 61 at 5. At her deposition for the 2011 Connecticut Case, however, it

After Blinkoff attempted to move to sanction Dorman at the March 3, 2023 hearing, Dorman stated that she "will happily concede . . . [that she] had those materials before [her] during [her] deposition" and that "perhaps saying [she] misspoke was incorrect." *See* Doc. No. 91 at 33. In her motion for sanctions, Blinkoff interprets Dorman's concession as an admission that Dorman "fabricated the story . . . that [Carpentino] had to take his daughter to the doctor" and that Dorman had "falsely told [Carpentino] that he was not needed for the rest of the trial." Doc. No. 87 at 2. Again, Blinkoff's conclusions are unsupported. For one, as detailed above, the excerpts of Dorman's deposition testimony in the 2011 Connecticut Case do not support the conclusion that Dorman "told [Carpentino] that he was not needed for the rest of the trial." *See* Doc. No. 87 at 2. Furthermore, no excerpts provided by Blinkoff support the contention that Dorman "fabricated" a "story" about Carpentino needing to take his daughter to the doctor during the trial of the 1997 Case.

What remains, then, is Dorman's contradictory statement in her motion to dismiss, in which she incorrectly claimed that she had not had access to her phone records and case records during her deposition for the 2011 Connecticut Case. Because there is insufficient evidence that such a contradiction amounts to "bad faith, vexatious, or wanton acts or actions otherwise undertaken for oppressive reasons," I **deny** Blinkoff's motion for sanctions. *Int'l Techs. Mktg.,* 991 F.3d at 368 (cleaned up and citation omitted).

### III.    Conclusion

Accordingly, for the reasons discussed above and on the record in court, I **grant** both motions to dismiss, doc. no. 58 and doc. no. 60. The defendants' motion to stay discovery, doc.

---

appears she only had excerpts from the 2006 Case's trial. *See* Doc. No. 53 at 26. It is not clear from Blinkoff's pleadings that the materials from the trial of the 2006 Case incorporate materials from the trial of the 1997 Case. I will, however, construe Blinkoff's allegations liberally to presume they do.

no. 65, is **denied as moot**. The plaintiff's motion to take judicial notice, doc. no. 89, is **granted**.

Additionally, the plaintiff's motion to impose sanctions including default, doc. no. 87, is **denied**.

Finally, the plaintiff's amended complaint is **dismissed with prejudice**. The Clerk is directed to

close this case.

        So ordered.

Dated at Bridgeport, Connecticut, this 31st day of March 2023.


                                        /s/ STEFAN R. UNDERHILL
                                        Stefan R. Underhill
                                        United States District Judge