## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOLLY BLINKOFF,<br>        Plaintiff, | No. 3:21-cv-1516 (SRU) |
| v. | |
| CITY OF TORRINGTON, et al.,<br>        Defendants. | |

## ORDER ON MOTION FOR RECONSIDERATION, MOTIONS TO TAKE JUDICIAL NOTICE

Holly Blinkoff ("Blinkoff"), proceeding *pro* se, brought this action in 2021 to reopen two prior cases and bring a new equal protection claim against prior defendants. Doc. No. 53 (amended complaint). The defendants Dorman and the City Defendants each filed motions to dismiss Blinkoff's amended complaint. *See* Doc. No. 58; Doc. No. 60. By written order ("my Order"), I granted both defendants' motions to dismiss. Doc. No. 96.

Blinkoff has now filed a motion for reconsideration pursuant to Local Rule 7(c) to challenge my Order. Doc. No. 98. Blinkoff has also filed two motions to take judicial notice. Doc. No. 99; Doc. No. 102. For the reasons set forth below, Blinkoff's motions to take judicial notice are both **granted**. Blinkoff's motion for reconsideration is **denied**.

I assume the parties' familiarity with the facts and procedural history[1] of these cases, as well as with the shorthand terms I adopted in my Order. *See generally* Doc. No. 96.

---

[1] In this Order, I reference the "1997 Case" and the "2006 Case." Both were cases before me. The 1997 Case was an action Blinkoff filed in 1997, and that case went to trial in April 2002. *See Blinkoff v. Torrington Planning*, Dkt. No. 3:97-cv-1345. The 2006 Case is an action Blinkoff filed in 2006 to set aside the judgment of the 1997 Case. *See Blinkoff v. Dorman*, Dkt. No. 3:06-cv-607. I held a bench trial, or evidentiary hearing, for the 2006 Case in December 2007.

Blinkoff also separately filed a 2011 Connecticut Case in state court. *See Blinkoff v. Dorman*, Dkt. No. HHD-CV-11-5035244-S. Blinkoff has introduced discovery documents, including deposition transcripts, from that 2011 Connecticut Case as support for her fraud on the court claim in the instant case. *See, e.g.*, Doc. No. 53 at 24-33.

## I.      Legal Standard

Local Rule of Civil Procedure 7(c) permits a party to file a motion for reconsideration with seven days of the filing of the decision from which the party seeks relief. D. Conn. Local R. Civ. P. 7(c). The Second Circuit has repeatedly held that "[t]he standard for granting . . . a motion [for reconsideration] is strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* Courts have granted motions for reconsideration in limited circumstances, including: (1) where there has been an "intervening change of controlling law"; (2) where new evidence has become available; or (3) where there is a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 at 790). On the other hand, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up).

## II.     Discussion

Much of Blinkoff's objection to my Order stems from her perspective that I "raised completely new issues" that she could not brief, and that I "abandon[ed] [my] role as a neutral . . . arbiter and took on an advocacy role on behalf of" the defendants. *See* Doc. No. 98-1 at 1. To any extent that I considered arguments not raised by the parties in their briefs, however, I did so in application of the standard for liberal construction of *pro se* litigants' claims. "It is well

established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis removed) (collecting cases). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* at 475 (citations omitted).

Blinkoff argues that I violated the party-presentation rule and avers that I considered questions not raised by the parties. Doc. No. 98 at 1. "The party-presentation rule[] governs when a court may add to the issues raised on appeal." *United States v. Graham*, 51 F.4th 67, 80 (2d Cir. 2022) (emphasis removed), *cert. denied*, 143 S. Ct. 1754 (2023). "The party presentation principle is supple, not ironclad. There are no doubt circumstances in which a modest initiating role for a court is appropriate." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

The defendants raised a wide range of issues in their motions to dismiss. The motion to dismiss submitted by the City Defendants raised the following arguments: mootness; lack of standing; lack of personal involvement; that the Planning & Zoning Commission is not a suable entity; that there is no plausible *Monell* claim; res judicata; that Blinkoff had not stated a selective enforcement claim because she has not satisfied the discriminatory intent or comparator requirements for the claim; and that Blinkoff had not stated a class-of-one claim because she had not satisfied the comparator requirements. *See generally* Doc. No. 58-1. The motion to dismiss submitted by Dorman raised the following arguments: res judicata; collateral estoppel; the doctrine of laches; and that, as a matter of fact, Blinkoff "is unable to establish the judgment against her was fraudulently obtained." *See generally* Doc. No. 61.

3

Assuming *arguendo* the applicability of the party-presentation rule, all arguments I considered in my Order fell into one of two categories: arguments raised by the defendants in their motions to dismiss, or potential arguments I considered in an effort to liberally construe Blinkoff's pleadings. It is with this understanding that I next turn to an explanation of my Order, within which I will address each of Blinkoff's remaining arguments raised in her motion for reconsideration. *See* Doc. No. 96.

A.  <u>Section II.B.3, "Plaintiff's Fraud on the Court Claim." Doc. No. 96 at 10.</u>

In Section II.B.3 of my Order, I considered Blinkoff's claim that she should be exempted from the doctrine of res judicata because, as she claimed, there had been fraud on the court. Doc. No. 96 at 10. I divided my analysis into two broad subsections. First, Section II.B.3.a considers whether Blinkoff sufficiently alleged a fraud on the court claim against Dorman. *See id.* at 11. In Section II.B.3.b, I assessed whether Blinkoff had alleged a fraud on the court claim against the City Defendants. *See id.* at 25.

1.  *Section II.B.3.a, "Fraud on the Court Claim Against Dorman." Doc. No. 96 at 11.*

I will first explain Section II.B.3.a, in which I evaluated Blinkoff's fraud on the court claim against Dorman and concluded by dismissing that claim. *See* Doc. No. 96 at 11.

a.  Section II.B.3.a.i, "Res Judicata." Doc. No. 96 at 11.

In Section II.B.3.a.i, I explained the doctrine of res judicata, and I clarified that res judicata also applies to bar successive Rule 60(b) actions. *Id.* at 11-14. In other words, the "fraud on the court" exception to res judicata cannot be used more than once. Blinkoff brought her 2006 Case pursuant to the fraud on the court exception to res judicata, and because of that exception, she was able to relitigate issues from the 1997 Case. Blinkoff's attempt to relitigate the 1997

Case again pursuant to the same res judicata exception is therefore *itself* barred by the doctrine res judicata. To the extent that my ruling on the defendants' motion to dismiss may have been unclear, I will reiterate for clarity that res judicata bars Blinkoff from employing the "fraud on the court" exception to reopen the 1997 Case for a second time.

Had Blinkoff not been a *pro se* litigant, I would have simply dismissed her claim that "fraud on the court" exempted her from res judicata for the 1997 Case without further analysis. However, in recognition of the special solicitude for *pro se* litigants, I construed Blinkoff's pleadings to raise the strongest claims that they suggest—here, that fraud on the court had been committed *in the 2006 Case*, such that Blinkoff may be permitted to relitigate the issues of the 2006 Case notwithstanding the doctrine of res judicata. In Section II.B.3.ii, which I discuss in further detail below, I analyzed the applicability of the fraud on the court exception *to the 2006 Case*. Blinkoff is correct that the defendants did not consider all aspects of the fraud on the court exception to res judicata for the 2006 Case[2]—but that is because the defendants, unlike the Court, had no obligation to construe her submissions to raise the strongest arguments they suggest.

  b. Section II.B.3.a.ii, "Applicability of the Fraud on the Court Exception to Res Judicata." Doc No. 96 at 14.

Accordingly, in the next portion of my analysis, I considered whether Blinkoff's pleadings suggested a viable "fraud on the court" exception to res judicata in the 2006 Case. *See* Doc. No. 96 at 14 n.3. As part of that consideration, I explained that fraud on the court requires

---

[2] It should be clarified that Dorman's motion to dismiss did address res judicata with respect to the 2006 Case. Doc. No. 61 at 3-4 (stating, under the heading of "[t]he Doctrines of Res Judicata and Collateral Estoppel Bar This Action," that "[t]o the extent that Blinkoff has argued since 2007 that the jury verdict in her original case was procured by fraud, she has had ample opportunity in both state and federal court to litigate that claim."). The defendants, however, did not discuss in their motions the exceptions to res judicata for the 2006 Case with the degree of specificity that I discussed those exceptions in my Order.

fraud perpetrated by officers of the court and not merely by party opponents. *Id*. at 14-15. The question I therefore contemplated was whether Blinkoff's allegations supported the claim that an officer of the court had committed a fraud in the 2006 Case. *Id*. at 15. In other words, I considered whether Blinkoff had alleged or could allege that (1) Dorman was an officer of the court in the 2006 Case, and (2) that she had committed fraud. Blinkoff would have needed to allege both to support a claim of fraud on the court in the 2006 Case.

>    i.    Section II.B.3.ii.(i), "Whether Dorman Acted as an Officer of the Court During the 2006 Case." Doc. No. 96 at 16.

In Section II.B.3.ii.(i), I turned to the question of whether Dorman could be characterized as an "officer of the court" in the 2006 Case.[3] Because Dorman was a party opponent in the 2006 Case and not an attorney representing a client, I concluded that Dorman had not been serving as an officer of the court during the 2006 Case. *Id*. at 17-20. I evaluated numerous cases that had been cited by Blinkoff in support of her contention that Dorman was an officer of the court, and I distinguished those cases. *Id*. *Herring*, which Blinkoff again cites in her motion for reconsideration, was among those cases that I discussed. *See* Doc. No. 98-1 at 7 (citing *Herring*

---

[3] In her reply in support of her motion for reconsideration, Blinkoff writes that "this Court acknowledged at the March 3, 2023 motion hearing that Attorney Dorman was an officer of the Court in the 2006 . . . case and this Plaintiff relied on that statement." Doc. No. 101 at 3-4. Here, Blinkoff is possibly misunderstanding the meaning of my statements during the hearing. During the hearing, in an attempt to clarify her argument, Blinkoff stated to me, "I'm saying that the deposition is an admission that she lied in the 2007 evidentiary hearing and she was an officer of the court." Doc. No. 91 at 22. I responded, "Correct. But because I already decided whether she lied as an officer of the court, you're going to have to come up with an exception to res judicata. And I'm not deciding it." *Id.* My response of "[c]orrect," was my acknowledgement that I understood the argument Blinkoff was making, not an affirmation that her argument was correct. That meaning is made clear by my next words, which were, "And I'm not deciding it." *Id.* Several lines down, Blinkoff asks, "There is no fraudulent exception to res judicata? . . . How could I have discovered that in the trial or in the original trial?" *Id.* at 23. I responded, "Well, in the 2007 trial, if you had the deposition testimony that you got in 2011, that would have been the opportunity to say that she has admitted as an officer of the court that she defrauded the court. Now, I'm not saying that that's what that testimony does, but that's the time that you would have been best to raise it." *Id.* Here, consistent with my written Order, I explained to Blinkoff that to the extent she sought to make a fraud on the court claim based on fraud committed by an officer of the court in the 1997 Case, she needed to present her evidence of that fraud (that is, the 2011 deposition testimony) at the bench trial of the 2006 Case (held in 2007).

*v. United* States, 424 F.3d 384 (3d Cir. 2005)); *see also* Doc. No. 96 at 18. Blinkoff objects in her motion for reconsideration that my Order in part relied on cases that she had not seen before. *See* Doc. No. 98-1 at 8. However, a Court is not required to base its ruling solely on the cases cited by the parties in their briefs; there are many circumstances in which a Court in fact should consider case law notwithstanding that the parties may have omitted that case law from their briefs. *Chicas-Machado v. Garland*, 73 F.4th 261, 267 n.3 (4th Cir. 2023) ("[T]he cases relied on by the parties are, of course, not the only authority that a court can or should consider in reaching its decision."); *see also Kamen v. Kemper Fin. Servs., Inc*., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

> ii.  Section II.B.3.ii.(ii), "Sufficiency of Plaintiff's Fraud Allegation Against
>       Dorman." Doc. No. 96 at 20.

Next, in Section II.B.3.a.ii.(ii), I turned to the question whether Blinkoff had plausibly alleged a "fraud." Doc. No. 96 at 20. I examined the allegations and exhibits Blinkoff included in her amended complaint. *Id*. at 21. I explained that "[w]here a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true." *Id*. at 22 (quoting *Francis v. Carusso*, 2022 WL 16716172, at *10 (D. Conn. Nov. 4, 2022)). I ultimately concluded that the facts pled by Blinkoff were not sufficient to show "fraud." Chiefly, despite Blinkoff's conclusory allegations, I determined that it was not reasonable to construe Dorman's deposition testimony as an admission that Dorman told Carpentino that he would not be needed for the remainder of the trial for the 1997 Case. *See id.* at 22-23. I further determined that Dorman's refusal to admit or deny facts in her requests for admission was not a sufficient basis for an allegation of fraud under

the Federal Rule of Civil Procedure 9(b) standard. *Id*. at 23. Next, I concluded that it was not reasonable to interpret Dorman's statements in her 2011 deposition as Dorman testifying that she never previously testified about a conversation with Carpentino. *Id*. at 24. Finally, I also considered Blinkoff's argument that Dorman had fraudulently concealed her phone records during the 2006 Case, and I concluded that, because it was I who denied admission of those phone records into evidence, Blinkoff had not shown that Dorman acted fraudulently. *Id.* at 25.

Blinkoff sets forth several arguments in challenge to my conclusion that she had not shown "fraud." First, Blinkoff contends that I overlooked Dorman's errata sheet to her 2011 deposition, in which Dorman corrected only certain statements and not others. *See* Doc. No. 98-1 at 10; Doc. No. 53 at 32. Blinkoff compares that errata sheet to Dorman's language in her objection to Blinkoff's motion for sanctions, in which Dorman states that she "has never lied to this court" and "simply misspoke as to dates during her deposition." Doc. No. 93 at 2. From Dorman's failure to correct the portions of her deposition regarding the dates, Blinkoff draws the inference that Dorman lied. Doc. No. 98-1 at 10. The problem with Blinkoff's argument, though, is that Blinkoff's exhibits to her amended complaint simply did not show Dorman misstating a date:

> [Presumably Blinkoff]: Was that to Mr. Carpentino?
>
> Dorman: It was to (860) 738-6593 in Winsted, Connecticut. It's recorded as two minutes.
>
> Blinkoff: Is that the call you're claiming you spoke to Mr. Carpentino on?
>
> Dorman: I did not say I spoke to him.
>
> Blinkoff: You did not say that you had a conversation at any time, including the December 3, 2007 evidentiary hearing, you did not say you had a conversation with Mr. Carpentino?
>
> Mr. Berk: Objection to form.

8

Mr. Blumenfeld: Objection to form.

Mr. Durham: Objection as to form.

Dorman: Objection as to form.

Dorman: You asked me about my responses to your requests for admission. I can only tell you that there is a cell phone call to Winsted, Connecticut at a number that at the time was Mr. Carpentino's place of business and it logged in at two minutes.

Blinkoff: And you never testified—you're claiming that you never testified that you had a conversation with Mr. Carpentino on that date; right?

Dorman: I would have to review the transcript of my testimony at the evidentiary hearing to be able to answer that question.

Doc. No. 53 at 27 (cleaned up). At no point in the excerpt of the transcript above did Dorman herself state a date, let along misstate one—she appears only to have responded in a limited fashion to Blinkoff's questions about the requests for admission.[4] It is Blinkoff who appears to attempt to corner Dorman into testifying that she had never testified to having a conversation with Carpentino "at any time, including the December 3, 2007 evidentiary hearing"—a suggestion to which Dorman immediately objects. *Id*. Moreover, even if Dorman had misstated a date, it is unlikely that such a misstatement would have sufficed for pleading fraud. Blinkoff is obligated pursuant to Rule 9(b) to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is a "heightened pleading standard," and a plaintiff alleging fraud "must allege facts that give rise to a strong inference of fraudulent intent." *Lerner*

---

[4] Blinkoff also points to Dorman's briefs and argues that Dorman essentially admitted to misspeaking. In Dorman's objection to Blinkoff's motion for sanctions, Dorman wrote, "This defendant has never lied to this Court. That the undersigned simply misspoke as to dates during her deposition is further reinforced by the transcript of the 2002 trial." Doc. No. 93 at 2. In Dorman's memorandum in support of her motion to dismiss, Dorman wrote, "In 2011, a single date was misstated." Doc. No. 61 at 5. Dorman herself admitted that she "has little to no independent recollection of the 2002 trial, or the 2007 evidentiary hearing." Doc. No. 93 at 2. The Court is under no obligation to consider argumentative statements by opposing counsel as part of the plaintiff's factual allegations, nor credit those arguments as factual allegations superseding the exhibits submitted by Blinkoff in her pleadings. Moreover, as I explain, even if Dorman's statements did show she misspoke, that does not mean that Blinkoff met her pleading obligations with respect to fraud.

*v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Group, Inc*., 47

F.3d 47, 52 (2d Cir. 1995)). A mere mistake does not necessarily reflect fraudulent intent.

Blinkoff also disputes my evaluation of another portion of Dorman's deposition, which

Blinkoff interprets as Dorman admitting that she had told Carpentino on April 8, 2022 that he

would not be needed for the remainder of the trial:

> Dorman: It looks like at 12:51 there was a call to [Carpentino's] home
> number in Cheshire and at 5:21—Oh, there was also a call at 1:25 to his
> place of business. And then at 5:21 there was another call to his home.
>
> Blinkoff: That's when you told [Carpentino]?
>
> Dorman: I can only testify that I called him.
>
> Blinkoff: Okay. But [Carpentino] knew at that point that he was not
> needed for the trial.
>
> Dorman: He was informed on the eighth because he never showed up.

Doc. No. 53 at 11-12 (cleaned up and emphasis removed).[5] In my Order, I reviewed that

deposition testimony and compared it to other testimony that Blinkoff had included in her

amended complaint. I determined that the testimony could not support the inferences that

Blinkoff sought to make. Doc. No. 96 at 21-22; *see* Doc. No. 53 at 11-12. In her motion for

---

[5] In Blinkoff's second motion for judicial notice, doc no. 102, she asks this Court to take judicial notice of a contradictory statement made by Dorman. Specifically, in Dorman's objection to Blinkoff's motion for reconsideration, Dorman states, "the record is replete with references to Carpentino coming to testify on Friday, April 12." Doc. No. 100 at 2. Blinkoff appends a portion of Dorman's 2011 deposition, where Dorman had testified that Blinkoff's lawyer "close[d] the case," or rested during the trial for the 1997 Case, on April 8, 2002. Doc. No. 102 at 4. Assuming *arguendo* that Dorman contradicted herself, this particular contradiction was not raised by Blinkoff prior to her motion for reconsideration. "[O]n a motion for reconsideration, a party may not 'advance new facts, issues, or arguments not previously presented to the court.'" *Naiman v. New York Univ. Hosps. Ctr.*, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005).

In any case, to invoke the res judicata exception to the 2006 Case, Blinkoff would have needed to show fraud on the court in the 2006 Case. Blinkoff appears to be arguing that Dorman's briefings in the instant case contradict her deposition testimony in 2011. That does not show fraud on the court in the 2006 Case. Moreover, even assuming *arguendo* the relevancy of such a contradiction, it alone is insufficient to show fraudulent intent. Given that the purported contradiction concerns facts from a trial that took place more than a decade ago, I can only draw at most a weak inference of fraudulent intent from a minor contradiction. The more plausible inference that can be drawn is mistaken recollection due to the passage of time.

I therefore **grant** Blinkoff's motion to take judicial notice, doc. no. 102, but the matters discussed in that motion are not properly considered in a motion for reconsideration and not directly relevant to the issues in this case.

reconsideration, Blinkoff insists that my interpretation of the testimony is incorrect, and that

"[t]here is no mention anywhere that Mr. Carpentino was scheduled to testify on April 8th,

2002." Doc. No. 98-1 at 12. On the contrary, the testimony provided by Blinkoff in her amended

complaint shows Dorman testifying that she had told Carpentino to be "on call" to potentially

testify on April 8, 2002 and, on April 8, she called him to tell him "we're not going to reach you

today":

> A . . . I telephoned Mr. Carpentino on, at 1:20 [5th] and arranged for him to
> be on call for the 8th.
>
> . . .
>
> Q . . . . is that two conversations that have occurred with Mr. Carpentino
> between you and Mr. Carpentino to that point?
>
> A . Correct.
>
> . . .
>
> ATTORNEY KARSTEN: Q . . . What was the conversation about his,
> between you and him on the 8th of April?
>
> ATTORNEY DORMAN: . . . my original telephone calls, records reflect
> they were made at 12:51 and 1:25. During one or the other of those calls, I
> was advising Mr. Carpentino as to the progress of the day . . . since we had
> Ms. Blinkoff . . . testifying . . . I told him we're not going to reach you
> today.
>
> . . .
>
> ATTORNEY KARSTEN: Q . . . Did you say anything else to him about
> his availability for the remainder of the trial during that conversation?
>
> ATTORNEY DORMAN. I did. I told him Mr. Williams still intended to
> call him and that, more than likely, it would probably be Friday [12th].

*See* Doc. No. 53 at 10-11 (emphasis removed). Upon reviewing those testimonies again, I reach

the same conclusion that there is no patent inconsistency in those testimonies by Dorman.

Therefore, Blinkoff has not set forth sufficient facts to plead fraudulent intent.

Furthermore, Blinkoff in her motion for reconsideration contends that "[c]ontrolling authority shows that the language 'not needed for the trial' means not needed for the entire trial." Doc. No. 98-1 at 11. However, it was Blinkoff and not Dorman who used the phrase "not needed for the trial" in the exchange between the two during the deposition. Doc. No. 53 at 11-12. Blinkoff therefore again attempts to draw the conclusion that Dorman made an unfavorable admission, basing that conclusion merely on questions that *she* asked Dorman during the deposition. In the evidentiary context, questions asked by counsel are not considered. *Washington v. Schriver*, 255 F.3d 45, 61 (2d Cir. 2001) ("[I]t is black letter law that questions asked by counsel are not evidence."). Here, Dorman's responses to questions posed by Blinkoff are simply not enough to "give rise to a strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290 (quoting *Acito*, 47 F.3d at 52).

Blinkoff next objects to my analysis of the issue of Dorman's phone records at the trial of the 2006 Case. Doc. No. 98-1 at 14. With respect to that issue, I grant Blinkoff's motion to take judicial notice of an affidavit regarding the trial of the 2006 Case, in which an attorney for the City Defendants averred that he "made use of 2002 cell phone records . . . that were in evidence." Doc. No. 99; Doc. No. 99-1 at ¶ 10. Blinkoff seeks to correct my Order by arguing that she "never said Attorney Dorman's phone records were in evidence." Doc. No. 99. My Order never claims that Blinkoff made such a statement. *See* Doc. No. 96 at 25. Here again, it appears that Blinkoff misreads my application of the liberal construction of *pro se* pleadings as this Court "advocating" for the defendants. In order to construe Blinkoff's amended complaint to raise the strongest possible claims it suggested, I construed her allegations regarding Dorman not admitting her phone records as an argument invoking the "fraudulently concealed" evidence exception to res judicata. *See* Doc. No. 96 at 14 (discussing the exception); *id.* at 25 ("Blinkoff

also *appears* to allege that Dorman fraudulently concealed her phone records from the trial of the 2006 Case") (emphasis added). As part of that analysis, I evaluated whether Blinkoff's complaint contained enough plausible allegations to support a claim that Dorman fraudulently concealed her phone records. Taking judicial notice of the docket of the 2006 Case, I noted that it was I— not Dorman—who excluded the phone records from the trial for the 2006 Case. Because the decision to exclude the phone records was not Dorman's but was mine, I concluded that it was not plausible that those phone records had been fraudulently concealed by Dorman. *Id.* at 25. Blinkoff's request for reconsideration on that issue is thus denied.

Blinkoff further contends that I overlooked my own ruling that, in order to win her Rule 60 motion, she needs to prove that an attorney lied to this Court. Doc. No. 98-1 at 15-16. Perhaps that was my ruling back in 2007, the first time that Blinkoff attempted to bring a fraud on the court action connected to conduct that took place in the 1997 Case. Applied in the context of the instant case, however, Blinkoff's characterization of my ruling is an oversimplification of the doctrine of res judicata. As I have previously articulated, my judgment in the 2006 Case was the final judgment on the merits, with all three res judicata elements met. *See* Doc. No. 96 at 12-13. Res judicata applies for successive Rule 60(b) motions. *See* Doc. No. 96 at 13; *see Hughes v. McMenamon*, 379 F. Supp. 2d 75, 79 (D. Mass. 2005). Blinkoff therefore cannot relitigate the issues that arose in the 2006 Case absent the application of an exception to res judicata. The exception to res judicata needed to be found in the 2006 Case—not the 1997 Case. *See generally* Doc. No. 96 at 12-14. My Order concluded that no such exception applied. *See generally* Doc. No. 96. For those reasons, strictly speaking, my ruling back in 2007 is inapplicable to the instant case.

2. *Section II.B.3.b, "Fraud on the Court Claim Against City of Torrington, Planning & Zoning Commission, and David Frascarelli." Doc. No. 96 at 25.*

In Section II.B.3.b, I addressed whether Blinkoff had brought a fraud on the court claim against the City Defendants, such that she could be exempted from the doctrine of res judicata for her claims against them. *Id*. I considered the argument that an act of fraud by Dorman could be imputed to the City of Torrington and concluded that it could not, absent any factual allegations supporting the inference. *Id*. at 25-26. Because Blinkoff had not alleged any particularized allegations that the City Defendants engaged in fraud on the court during the 2006 Case, I dismissed that claim against the City Defendants. *Id*.

Blinkoff did not seek reconsideration of my ruling on the applicability of the fraud on the court exception to the City Defendants. Accordingly, having concluded my review of the portions of my Order concerning Blinkoff's fraud on the court claim, I will next turn to the discussion of her equal protection claim. *Id*. at 26.

3. *Section II.B.4, "Plaintiff's Equal Protection Claim." Doc. No. 96 at 26.*

The next arguments in Blinkoff's motion for reconsideration challenge the portions of my Order that concern her equal protection claim. As I did above, I will explain the substance of my Order in conjunction with addressing each of Blinkoff's arguments in her motion for reconsideration.

In ruling on the defendants' motions to dismiss Blinkoff's equal protection claim, I began my analysis by determining whether the res judicata elements had been met, such that Blinkoff's new equal protection claim was precluded by the judgment in the 1997 Case. *See* Doc. No. 96 at 26. I concluded that the first two elements had been met because Blinkoff had brought two equal protection claims in the 1997 Case against parties in privity with the prior defendants. *Id*. at 27-28.

14

I next considered whether the third element had been met—that "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018). In her motion for reconsideration, Blinkoff argues that I overlooked controlling authority that her equal protection claim could not have been brought in the 1997 Case. Doc. No. 98-1 at 16. Specifically, she argues that circumstances changed since the 1997 Case, and res judicata does not bar successive claims concerning different factual circumstances. *See* Doc. No. 98-1 at 16-17. Blinkoff also writes that the City Defendants denied her a permit after she won her state court decisions in 1999. *Id.* at 17.

In Blinkoff's amended complaint, she alleged that she had

> applied for an excavation permit on a 40-acre property abutting hers known as 260 Burr Mountain Road . . .The City denied her the permit based on the unacceptable intrusion into a residential zone and not in conformity with the city master plan. (See Exhibit-Denial O-1-O-2 City of Torrington Denial of Plaintiff's Excavation permit now referred to as 3217 Winsted Road (formally known as 260 Burr Mountain Road.).

Doc. No. 53 at ¶¶ 71-72. Blinkoff's exhibit O, which she referenced in her allegations above, is an excerpt of the minutes for a July 23, 1997 City of Torrington Planning & Zoning Commission meeting. Doc. No. 53 at 110-12. Blinkoff's amended complaint and its exhibits did not discuss permit denials other than the 1997 denial. "[O]n a motion for reconsideration, a party may not 'advance new facts, issues, or arguments not previously presented to the court.'" *Naiman v. New York Univ. Hosps. Ctr.*, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005) (quoting *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.*, 768 F. Supp. 115, 116 (S.D.N.Y. 1991)). Blinkoff therefore cannot, in a motion for reconsideration, modify her equal protection claim to make it a claim about a different, subsequent permit denial. *See Analytical Surveys, Inc.*, 684 F.3d at 52.

My Order next considered whether Blinkoff had alleged an exception to res judicata. As I wrote in my Order, there is an exception to res judicata for "newly discovered evidence" that "could not have been discovered with due diligence." Doc. No. 96 at 30 (quoting *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991)). Blinkoff alleged in her amended complaint, and reemphasizes in her motion for reconsideration, that she did not discover O&G Industries' operation until she drove to their quarry on November 12, 2018. Doc. No. 98-1 at 18.

In her motion for reconsideration, Blinkoff argues that no defendant argued accrual in this action and that my consideration of this issue was "advocacy" for the defendants. *Id.* at 19. Both defendants, however, raised res judicata in their motions to dismiss. As I discussed in my Order, Blinkoff previously brought an equal protection claim in the 1997 Case, and the three res judicata elements apply to bar Blinkoff from bringing a new equal protection claim against defendants in privity with the prior defendants. Doc. No. 96 at 27-28. Had Blinkoff not been a *pro se* party, I perhaps would have ended my analysis there. However, in Blinkoff's amended complaint, she argued that her equal protection claim had not accrued at the time of the 1997 Case. Liberally interpreting her pleadings, I construed that argument about accrual as an invocation of an exception to res judicata regarding evidence not previously discoverable with due diligence. *See* Doc. No. 96 at 30 (citing *Saud*, 929 F.2d at 920). I then considered the viability of that argument, and I came to a conclusion that was *in her favor*—that perhaps an exception to res judicata might apply with respect to Blinkoff's new equal protection claim. *Id.* at 31.

In the next portion of my Order, I assumed that Blinkoff's equal protection claim was not barred by res judicata, and I considered whether Blinkoff's comparator, O&G Industries, was similarly situated for the purpose of Blinkoff's equal protection claim. Doc. No. 96 at 31-32. I

16

concluded that it was not, because there is too great a temporal difference between Blinkoff being denied a permit in 1997 and O&G Industries being granted one in 2021. *See id*. at 32-34. In her motion for reconsideration, Blinkoff argues that I overlooked key facts relevant to the determination whether O&G Industries was a proper comparator. Doc. No. 98-1 at 18. Specifically, Blinkoff submits that the 2021 permit grant to O&G Industries was not the first permit—the permit "was a 'biannual renewal,'" and the quarry "had been operating for years." *Id.*

> Blinkoff's amended complaint alleged the following regarding O&G Industries' permit:

>> Plaintiff applied for an excavation permit on a 40-acre property abutting hers known as 260 Burr Mountain Road . . . The city denied her the permit . . . On November 11, 2018, Plaintiff drove into the site to discover her former competitor, O&G Industries, was operating it without a permit in their name . . . The operation was massive with several stone crushers, washing facilities, silt ponds—nothing like Plaintiff had proposed and was denied. On March 2021, O&G Industries . . . got a brand new permit . . . merging several parcels that were not part of their original permit, along with Plaintiff's former parcel . . . which now comprised 260 Burr Mountain Road—the permit she was denied. . . . This current quarry that was approved expanded 260 Burr Mountain Road which was a 40-acre parcel that was denied to now over 230 acres. . . [T]his new permit had only a 400-foot buffer on Burr Mountain Road—the basis of the denial [] of Plaintiff's permit allegedly impacting this "residential area."

Doc. No. 53 at ¶¶ 71-80 (cleaned up). Blinkoff's equal protection claim was therefore based specifically on a 2021 permit, which, as she alleged, was "brand new" and newly merged plots of land that had once been denied to Blinkoff. *Id*. Even if O&G Industries was operating a quarry before 2021, the subject of Blinkoff's equal protection claim was the granting of a new permit— or at the very least a permit modification—that occurred in 2021. There were more than two decades between O&G Industries obtaining that permit and Blinkoff being denied a similar permit. That temporal difference between the acts of denying and granting permits for the same plots of land is what matters. Such a substantial temporal difference, particularly in the land-use

context, makes it so that Blinkoff and O&G Industries cannot be "similarly situated in all material respects." *Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) (quoting *Vassallo v. Lando*, 591 F.Supp.2d 172, 184 (E.D.N.Y. 2008)).

## III.    Conclusion

What Blinkoff reads as an "ambush" was largely this Court construing her pleadings so liberally in her favor that the Court considered multiple potential legal arguments she could have made based on her factual allegations. Unfortunately, in analyzing each one of those hypothetical arguments, I came to the same conclusion—that none of those potential claims was viable, and that her case must accordingly be dismissed. As I explained in my Order, the doctrine of res judicata does not promise perfect outcomes for all litigants, but it is nevertheless a well-settled and binding principal in our judicial system. Doc. No. 96 at 11.

Accordingly, for the foregoing reasons, Blinkoff's motion for reconsideration is **denied**. Doc. No. 98. Blinkoff's motions to take judicial notice are both **granted**. Doc. No. 99; Doc. No. 102.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of February 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

18